IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:16-cv-347-MHT-GMB |
| | ) | [WO] |
| HOSPITALITY MANAGEMENT | ) | |
| ASSOCIATES, INC., and | ) | |
| DOUGLAS GURNEY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 24. Plaintiff Christopher Thornton filed this lawsuit on May 16, 2016, alleging that Defendants Hospitality Management Associates, Inc. ("HMA") and Douglas Gurney operate an establishment in Montgomery, Alabama, in violation of the Americans with Disabilities Act. Doc. 1. Now before the court are the Motion for Sanctions (Doc. 29) and Rule 37(a)(5)(A) Motion for Expenses (Doc. 30) filed by Thornton. After careful consideration of the motions, the applicable law, and the record as a whole, the undersigned RECOMMENDS that the motions (Docs. 29 & 30) be GRANTED.

## I.  BACKGROUND

Thornton brought this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA"), alleging that the property owned by the defendants, 1048

Jazz & Blues ("1048") in Montgomery, Alabama, is not in compliance with the ADA's directives. Doc. 1.  Thornton is a resident of Montgomery who suffered a spinal cord injury that has limited his mobility and activities of daily living. Doc. 1 at 2.  He contends that he has encountered architectural barriers that prevent him from full and equal enjoyment of the premises due to his disability. Doc. 1 at 3.  The barriers are allegedly prevalent throughout the facility, including within the parking lot, entranceways, entertainment areas, bathrooms, and common areas. Doc. 1 at 6.  Specifically, the barriers are alleged to be as follows:

a)  There is no handicapped accessible route to enter the facility;
b)  There is no ADA accessible entrance;
c)  There is no ADA accessible route from the entrance to and throughout the facility;
d)  There is no ADA accessible route throughout the dining areas including the raised/sunken area and outdoor dining area;
e)  The restroom is not accessible because there is not 18 inches of clear floor space on the latch side of the door;
f)  The urinal is not ADA accessible because there is not 36 inches of clear floor space for a forward approach;
g)  The water closet is not accessible, because the centerline of the toilet is too far from the side wall (21 inches);
h)  There is not 5% ADA accessible seating in the outside dining area;
i)  The mirror and coat hook are too high;
j)  The toilet room door is not self-closing and fails to have door pulls located on both sides;
k)  The toilet paper dispenser restricts the delivery of a continuous flow of paper;
1)  The soap dispenser requires tight grasping, twisting, and/or pinching of the wrist.

Doc. 1 at 6–7.  Thornton maintains that remediation of the barriers would be readily achievable and technically feasible. Doc. 1 at 7–8.

In his complaint, Thornton asks the court to grant injunctive relief to bring 1048 into compliance with the ADA. Doc. 1 at 8–9. Thornton's requested sanctions include the entry of a default judgment, that the court treat the defendants' failure to comply as contempt of court, and that the court take the facts alleged in Thornton's complaint as established. Doc. 29 at 6–7. Thornton also requests an order closing the facility until the requisite improvements have been completed. Doc. 29 at 8. Finally, he seeks attorney's fees and costs of litigation, including fees incurred in preparation of the motion for sanctions. Docs. 29 & 30.

HMA and Gurney have a long and well-documented history of failing to appear and participate in this lawsuit. The record reflects that service on both defendants was perfected on July 14, 2016, *see* Docs. 4 & 5, making responsive pleadings due on August 4. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). On September 19, after the defendants had failed to file a responsive pleading within the time period allowed by law, attorney Charles Ted Turnipseed, Jr., appeared and requested a two-week extension of the deadline to answer Thornton's complaint. *See* Doc. 10. The court granted this request, but the defendants did not file a responsive pleading until October 28. *See* Docs. 13 & 18. The court eventually entered a scheduling order on December 13. *See* Doc. 25.

However, early in 2017, the proceedings hit another roadblock when Turnipseed and the defendants refused to permit an expert inspection of 1048, referring to Thornton's lawsuit as an "extortion attempt." *See* Doc. 26 at 1–2. Thornton filed a motion to compel after a complete breakdown in communications between his counsel and Turnipseed. *See* Doc. 26 at 2–3. As a result, the court issued a show-cause order requiring the defendants

to respond to the motion to compel no later than February 7, 2017. Doc. 27.  Even so, they did not respond, and on February 13 the court granted the motion to compel and ordered the defendants to make the premises available for inspection no later than February 27. *See* Doc. 28.  No inspection of the facility occurred.  Instead, an expert inspector and Tracy Birdsong, counsel for the plaintiff, were turned away by Gurney who, even after being informed of the court's order to permit inspection, referred to counsel as "bottom feeders" on a "fishing expedition" and refused access to the facility. *See* Doc. 29-3 at 3.

After Thornton filed the motions for sanctions and attorney's fees, the court directed the defendants to show cause as to why the motions should not be granted. *See* Doc. 31. For the second time, the defendants ignored a show-cause order, and the court scheduled a hearing on the motions. *See* Docs. 32 & 34.  On June 21, 2017, the court conducted a hearing at which the defendants and their counsel failed to appear.  The hearing was therefore abbreviated, with the court merely clarifying the plaintiff's position on the particular sanctions he seeks.  To date, defense counsel has failed to contact the court to offer an explanation or justification for his absence.  Thus, with no opposition from the defendants, the motions are now ripe for the court's recommendation.

## II.  STANDARD OF REVIEW

### A.      Rule 37

Rule 37 of the Federal Rules of Civil Procedure states that "[i]f a party or a party's officer . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A).  Sanctions

may include, among other things, the direction that certain facts be taken as established,[1]

entering a default judgment, or treating the failure to obey as contempt of court. *See id.*

The rule grants broad discretion to district courts to "fashion appropriate sanctions for

violation of discovery orders; however, this discretion is guided by judicial interpretation

of the rule." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

The sanction of default judgment requires willfulness or bad faith on the part of the

disobeying party—negligence, misunderstanding, or an inability to comply is not

sufficient. *See id.* (citations omitted).  And "default judgment is appropriate only as a last

resort, when less drastic sanctions would not ensure compliance with the court's orders."

*Id.* (citations omitted).  Moreover,

> [i]nstead of or in addition to the orders above, the court must order the
> disobedient party, the attorney advising that party, or both to pay the
> reasonable expenses, including attorney's fees, caused by the failure, unless
> the failure was substantially justified or other circumstances make an award
> of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

## B.    Default Judgment

Under Federal Rule of Civil Procedure 55(b)(2), a district court may enter a default

judgment against a defendant who was properly served[2] and who has failed to defend or

appear. Fed. R. Civ. P. 55(b)(2); *see Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239,

1244 (11th Cir. 2015).  When a default judgment is entered, the court accepts all of the

---

[1] In recommending that the court grant a default judgment to Thornton, the undersigned has accepted all well-pleaded facts in the complaint.  This outcome renders academic Thornton's independent request that certain facts be established as true for purposes of the lawsuit.

[2] The court finds that both defendants were properly served with process on July 14, 2016. Docs. 4 & 5.

complaint's factual allegations as true. *See, e.g.*, *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 666 (M.D. Fla. 2015). However, "[w]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain*, 789 F.3d at 1245 (internal quotation marks omitted). Thus, the court may only enter a default judgment if the complaint's factual allegations "provide a sufficient legal basis for entry of a default judgment." *Cohan*, 309 F.R.D. at 666.

In the Eleventh Circuit, this standard is akin to the standard applied in a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Surtain*, 789 F.3d at 1245. Therefore, the court must determine whether the complaint "'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 662). The Eleventh Circuit has cautioned, however, that "there is a strong policy of determining cases on their merits," and default judgments are accordingly viewed with "disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).

Once the court is satisfied that a default judgment is warranted, the court "turns to the terms of the judgment." *Cohan*, 309 F.R.D. at 667. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Under Rule 55, the court may conduct hearings or make referrals to determine the

6

amount of damages and establish the truth of any factual allegation. Fed. R. Civ. P. 55(b)(2). "Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief." *Cohan*, 309 F.R.D. at 667.

## III. DISCUSSION

### A.    Thornton's ADA Claim

The record before the court establishes that the defendants' refusal to obey the court's order to allow an expert inspection was both willful and in bad faith.  Thornton's attorneys have submitted email exchanges with Turnipseed revealing that the defendants had no intention of permitting an inspection. *See, e.g.*, Doc. 26-2 at 3 ("My client[s] will agree to no inspection without some verifiable proof that your claim is based on more than conjecture.").  Even after Thornton's attorneys told Turnipseed that they intended to file a motion to compel, Turnipseed repeatedly failed to return phone calls and emails from them. *See* Doc. 26 at 3–4; Doc. 26-4 at 2–3; Doc. 29-2 at 3.  Finally, any doubt as to the defendants' motive in denying access to the facility is erased by objectively inappropriate and hostile comments directed toward Thornton and his attorneys. *See, e.g.*, Doc. 26-2 at 3 ("My client further asserts that this is an extortion attempt, that your firm is in the business of soliciting clients to pursue a business model that is based on the 'vexatious client' whose livelihood is seeking vulnerable businesses as a livelihood and suffering no real damages."); Doc. 29-3 at 3 ("[Gurney] then proceeded to call our client, Christopher Thornton, and attorneys representing Mr. Thornton 'bottom feeders' on a 'fishing expedition' who are 'trying to get something for nothing' and 'prey on local businesses.'").

Furthermore, the court finds that lesser sanctions would not suffice to bring the defendants into compliance with the court's orders.  Since Thornton filed the motion to compel on January 30, 2017, the defendants' only apparent participation in this lawsuit occurred on June 9, when Turnipseed filed a one-paragraph motion to withdraw from the representation. *See* Doc. 35.  The defendants have ignored two show-cause orders (*see* Docs. 27 & 31) and the order to compel discovery (*see* Doc. 28), and they have failed to appear at the hearing on the motions for sanctions and attorney's fees.  This history of complete noncompliance with court orders suggests that the defendants will not be motivated to participate appropriately in this lawsuit without meaningful sanctions such as a default judgment.

### 1.    *Standing*

A federal court has a duty to "assure itself at the outset of litigation that a litigant who seeks an injunction has Article III standing." *Norkunas v. Seahorse NB, LLC*, 720 F. Supp. 2d 1313, 1316 (M.D. Fla. 2010).  "To satisfy the requirements of standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) that a favorable court ruling could redress the injury." *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 415 (11th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Injunctive relief requires an additional showing of the plaintiff's actual or imminent injury. *Norkunas*, 444 F. App'x at 415.  "Past exposure to illegal conduct, without a continuing threat of future harm, is insufficient to establish standing for injunctive relief." *Hoewischer v. MGML, LLC*, 2013 WL 8655891, at *3 (M.D. Fla. April 12, 2013).  Thus,

to seek injunctive relief, Thornton must allege "facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). To assess the likelihood of future harm, district courts generally focus on four factors: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plan to return, and (4) the plaintiff's frequency of travel near defendant." *Norkunas*, 720 F. Supp. 2d at 1316. To be awarded injunctive relief under the ADA, a plaintiff must either "have attempted to return to the non-compliant building or at least intend to do so in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) (internal quotation marks omitted).

The court concludes that Thornton has standing to bring his claim under the ADA. Thornton has demonstrated a concrete injury in fact by alleging that he has been precluded from equal access to 1048 as a result of the establishment's deficient facilities. *See, e.g.*, *Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp. 2d 1212, 1222 (M.D. Fla. 2012) (stating that a plaintiff established an injury in fact where he alleged facts that allowed the court to "infer that, if true, Plaintiff could not fully enjoy Defendant's facilities because of his encounters with the barriers"). HMA and Gurney's conduct is the purported cause of Thornton's injuries. Finally, a favorable ruling, namely that injunctive relief is granted, would redress the injury by according Thornton full and equal access to the establishment. Therefore, Thornton has met the requirements for Article III standing.

Additionally, Thornton has satisfied his burden to demonstrate a likelihood of future harm if injunctive relief is not granted. He alleged that he has visited 1048 on multiple

9

occasions and lives in Montgomery, Alabama, where 1048 is located. Doc. 1 at 2–3. Additionally, he "definitely intends to continue to go to 1048." Doc. 1 at 3. Because there is nothing before the court to suggest any of the alleged barriers have been remedied, Thornton will surely suffer the same alleged injury when he returns. *See, e.g., Houston*, 733 F.3d at 1337 (finding a high likelihood of future injury where a plaintiff lived 30 miles from the store in question and planned to return in the future). Therefore, the court concludes that Thornton has standing to seek injunctive relief pursuant to 42 U.S.C. § 12188(a)(2).

## 2.     *Title III*

Title III of the ADA provides generally that "no individual shall be discriminated against on the basis of disability" in "any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It was created "to prevent owners of public places of accommodation from creating barriers that would restrict a disabled person's ability to enjoy the defendant entity's goods, services, and privileges." *Morgan v. Christensen*, 582 F. App'x 806, 809 (11th Cir. 2014). To state a valid Title III claim, a plaintiff must prove that "(1) he is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA." *Norkunas*, 444 F. App'x at 416. Discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Thornton has the initial burden to show "(1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is readily

achievable." *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006). "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

Thornton has sufficiently alleged that he is disabled and that HMA and Gurney own and operate 1048, which is a "place of public accommodation" within the meaning of § 12181(7)(B). And after a thorough review of Thornton's allegations the court is satisfied that Thornton would be able to provide demonstrable evidence of discrimination under § 12182(b)(2)(A)(iv). Thornton has alleged a number of architectural barriers at 1048—in the entryways, entertainment area, men's restroom, and other areas—which have not been remedied. Doc. 21 at 6–8. Accepting Thornton's allegations as true, the court is satisfied, based on its review of the ADA and the record before it, that these conditions violate the provisions of the ADA, which satisfies Thornton's burden to demonstrate the existence of a barrier. *See, e.g.*, *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1009–10 (C.D. Cal. 2014) (concluding that a plaintiff demonstrated the existence of a barrier by alleging violations of the standards set out in the ADA Accessibility Guidelines).

In addition, Thornton has alleged that appropriate alterations of the barriers would be "both readily achievable and technically feasible." Doc. 1 at 8–9. Therefore, Thornton has met his burden to establish that removal of the barriers is readily achievable. *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1011 (finding that the plaintiff's "allegation that removal of the barriers was readily achievable is sufficient to satisfy his burden of production" before granting the plaintiff's motion for default judgment); *Lugo v. 141 NW 20th Street Holdings, LLC*, 878 F. Supp. 2d 1291, 1294–95 (S.D. Fla. 2012) (stating that, at the pleading stage,

the plaintiff is not required to "provide additional specificity regarding the nature and cost

of the action needed to remedy the violations").  Additionally, many of the fixes necessary

to remove these barriers can be found in 28 C.F.R. § 36.304(b), which provides examples

of readily-achievable remediation. *See* 28 C.F.R. § 36.304(b) (listing as examples of steps

that are readily achievable the installation of ramps, curb cuts, grab bars, rearranged toilet

partitions, rearranged furniture, widened doors, and others).   Accordingly, the court

concludes that Thornton has stated a viable claim under Title III of the ADA, 42 U.S.C.

§ 12188(b)(2)(A)(iv).

**B.    Remedies**

  ***1.    Injunctive Relief***

    The ADA explicitly provides that in the event of a violation of § 12182(b)(2)(A)(iv),

"injunctive relief shall include an order to alter facilities to make such facilities readily

accessible to and usable by individuals with disabilities to the extent required by this

subchapter." 28 U.S.C. § 12188(a)(2).  In order to seek injunctive relief, Thornton must

show that: (1) he has a substantial likelihood of success on the merits of his case, (2) he

will suffer irreparable injury unless the injunction is granted, (3) his injury outweighs any

damage the injunction may cause to HMA and Gurney, and (4) the injunction would not

be adverse to the public interest. *C.B. v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.*, 261 F.

App'x 192, 193 (11th Cir. 2008).  "The asserted irreparable injury must be neither remote

nor speculative, but actual and imminent." *Id.* at 194 (internal quotation marks omitted).

    Because the court has concluded that Thornton has stated a viable discrimination

claim under Title III of the ADA, the court finds that he has demonstrated a substantial

likelihood of success on the merits of his case.   Thornton has also met his burden in

demonstrating that he will suffer irreparable injury unless the injunction is granted and the

barriers at 1048 are remedied.   Thornton's permanent and irreparable injury—the denial of

the full and equal enjoyment of 1048's services, facilities, and accommodations on the

basis of his physical disability—outweighs any minor inconvenience imposed upon HMA

and Gurney in retrofitting their establishment in accordance with the ADA Accessibility

Guidelines.   Finally, the injunction would not be adverse to the public interest.   On the

contrary, it would benefit those customers who, like Thornton, may be disabled and

consequently denied full and equal access to 1048.   Thus, Thornton has successfully

demonstrated that injunctive relief is necessary to remedy the defendants' violation of

§ 12182(b)(2)(A)(iv).

### 2.    *Attorney's Fees and Expenses*

In addition to injunctive relief, Thornton has requested to recover expenses that can

be divided into three main categories: (1) $4,140.50 in attorney's fees and expenses for

preparation of the motion for sanctions; (2) $3,013.62 in expert fees and expenses for the

attempted inspection of 1048; and (3) $1,053.50 in attorney's fees and expenses for

preparation of the motion to compel.   Under Rule 37, the court has discretion whether to

tax attorney's fees and expenses against "the disobedient party, the attorney advising that

party, or both." Fed. R. Civ. P. 37(b)(2)(C).   As both the defendants themselves and their

attorney, Turnipseed, have displayed a record of willful noncompliance and misconduct,

as described above, the court concludes that fees and expenses should be taxed jointly and

severally against HMA, Gurney, and Turnipseed.

####### i.       Attorney's Fees

The ADA "authorizes a court, in its discretion, to 'allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs.'" *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (quoting 42 U.S.C. § 12205).  The court concludes that Thornton is a prevailing party within the meaning of the ADA because the injunctive relief afforded to Thornton amounts to a "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001); *see Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.").

When calculating reasonable attorney's fees, courts within the Eleventh Circuit use the lodestar method, which requires a calculation of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate—the customary fee charged by attorneys of comparable skills, experience, and reputation in the same community for similar legal services. *Neptune Designs*, 469 F.3d at 1359; *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The court may then adjust this lodestar upward or downward based on a variety of factors, including the novelty and difficulty of the issues presented, the experience and skill of the attorneys, and the results obtained. *Neptune Designs*, 469 F.3d at 1359; *see Johnson v. Ga. Hy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (listing twelve factors).  "The court has a responsibility to assess independently the reasonableness of an attorney-fee award, even when both

parties agree to the award." *Henderson v. Thomas*, 2013 WL 5493197, at \*9 (M.D. Ala.

Sept. 30, 2013).

The party requesting attorney's fees bears the burden of "establishing entitlement

and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. This

includes "specific and detailed evidence from which the court can determine the reasonable

hourly rate." *Id.* Where "there is a lack of documentation or support the court may make

the award on its own experience," and may do so "without the need of further pleadings or

an evidentiary hearing." *Id*.

The reasonable hourly rate for an attorney's services is determined by market rates

in the locality in which the case was filed. *Adams v. City of Montgomery*, 2013 WL

6065763, at \*2 (M.D. Ala. Nov. 18, 2013). Relying on the court's own experience and

knowledge of the litigation market in this district—and in light of the defendants' failure

to voice any opposition to the motion for sanctions—the court concludes that $285 and

$325 are reasonable hourly rates for Attorneys Polson and Birdsong, respectively. This

conclusion is based primarily on the nature of the legal and factual issues in this case, the

results obtained for their client, and fee awards in other ADA cases within this district.

The next step is to ascertain the reasonable amount of hours expended by counsel

on the litigation. *Norman*, 836 F.2d at 1301. Hours that are "excessive, redundant or

otherwise unnecessary" should be excluded. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S.

424, 434 (1983)). Thus, fee applicants must exercise "billing judgment" and must exclude

those hours "that would be unreasonable to bill to a client and therefore to one's adversary."

*Norman*, 836 F.2d at 1301. The court has the discretion to exclude work performed on

unrelated tasks—time that is not reasonably expended on the litigation. *Maner v. Linkan LLC*, 602 F. App'x 489, 491 (11th Cir. 2015).   Thornton's attorneys have submitted detailed billing statements establishing their time on this litigation and describing the specific tasks accomplished. *See* Docs. 29-4 & 30-1.  Again looking through the lens of the defendants' lack of objection to the motion for sanctions, the court concludes that the time sought by Thornton's attorneys is reasonably related to the defendants' discovery abuses. Therefore, for Birdsong, the court allows 1.4 hours in preparation of the motion to compel and 4.5 hours in preparation of the motion for sanctions and supporting documentation. *See* Docs. 29-4 at 2–3 & 30-1 at 2.  For Polson, the court allows 2.1 hours in preparation of the motion to compel and 9.4 hours in preparation of the motion for sanctions. *See* Docs. 29-4 at 2–3 & 30-1 at 2.  Multiplying these hours by the reasonable hourly rate for each attorney yields a total lodestar of $5,195.

Thornton's attorneys have not requested that this lodestar be augmented by the application of a multiplier. *See* Docs 29 & 30.  Balancing the results obtained for Thornton and the public interest vindicated in this case against the nature of the legal and factual issues and the dearth of evidence regarding Polson and Birdsong's experience, skill and reputation within the legal community, the court concludes that no multiplier is warranted and that the aggregate attorney's fee award should be $5,195.

### ii.    Expenses

Finally, Thornton seeks an award of fees for his expert inspector, who traveled from Atlanta, Georgia, to Montgomery to complete the inspection, but was unable to do so.  In support of his request, Thornton has submitted an invoice from Stanton Law in Atlanta for

the services of inspector Christine Green. *See* Doc. 29-5.  Upon an independent review of the invoice, the court concludes that the fees and expenses charged by Stanton Law for Ms. Green's services are reasonable, particularly where the defendants have not advanced any argument to the contrary.  Accordingly, the court recommends granting Thornton's request for $3,013.62 in expenses.

### 4.      *Contempt*

In the motion for sanctions, Thornton requests that the court treat the defendants' failure to abide by its order compelling discovery as contempt of court. Doc. 29 at 6.  On the showing currently before it, and particularly because there has been at least some suggestion of a breakdown in communications between the defendants and their counsel, the court cannot conclude that it would be appropriate to hold the defendants in contempt of court.  However, the defendants are cautioned that any additional failure to abide by the orders of this court may result in a finding of contempt.

### 5.      *Closure of the Facility*

Finally, Thornton requests in his motion for sanctions that 1048 be ordered to close until the defendants have completed the requisite improvements and the establishment is ADA-compliant. Doc. 29 at 8.  However, during the court's hearing on June 21, Thornton's counsel recognized the severity of this sanction and expressed no objection to allowing the facility to remain open while repairs are made.  Accordingly, the court recommends the denial of this requested relief.

## IV.  CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Thornton's Motion for Sanctions (Doc. 29) and Rule 37(a)(5)(A) Motion for Expenses (Doc. 30) be GRANTED.

Accordingly, the Magistrate Judge recommends:

1.      That a default judgment be entered against Defendants Hospitality Management Associates, Inc. and Douglas Gurney.

2.      That the default judgment include injunctive relief in the form of repairs sufficient to cure the following defects and thus to bring the facility at 1104 East Fairview Avenue, Montgomery, Alabama, in compliance with the provisions of the Americans with Disabilities Act:

> a)      There is no handicapped accessible route to enter the facility;
> b)      There is no ADA accessible entrance;
> c)      There is no ADA accessible route from the entrance to and throughout the facility;
> d)      There is no ADA accessible route throughout the dining areas including the raised/sunken area and outdoor dining area;
> e)      The restroom is not accessible because there is not 18 inches of clear floor space on the latch side of the door;
> f)      The urinal is not ADA accessible because there is not 36 inches of clear floor space for a forward approach;
> g)      The water closet is not accessible, because the centerline of the toilet is too far from the side wall (21 inches);
> h)      There is no 5% ADA accessible seating in the outside dining area;
> i)      The mirror and coat hook are too high;
> j)      The toilet room door is not self-closing and fails to have door pulls located on both sides;
> k)      The toilet paper dispenser restricts the delivery of a continuous flow of paper;
> l)      The soap dispenser requires tight grasping, twisting, and/or pinching of the wrist.

3.      That the default judgment include an award to Thornton of attorney's fees in the amount of $5,195 and expenses of $3,013.62, to be assessed against Defendants Hospitality Management Associates, Inc. and Douglas Gurney and their counsel of record, Charles Ted Turnipseed, Jr., jointly and severally.

It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **not later than July 10, 2017**.  Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 26th day of June, 2017.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

19